The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye, all persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. Welcome. Our first case this morning is Simmental-Galarza v. Barr. Ms. Espinosa. Good morning, Your Honors.  My client, Mr. Simmental-Galarza, endured repeated physical and mental abuse at the hands of his former spouse by the majority of his three-year-long marriage. As a result of that abuse, he now suffers from post-traumatic stress disorder, known as PTSD, dependent personality disorder, severe anxiety, and severe depression. The relief that Mr. Simmental-Galarza was seeking before the agency is called special rule cancellation of removal. That relief is meant to protect people that have suffered such abuse, and is very different from the conventional cancellation of removal. The standard to show eligibility is the applicant must show he would experience extreme hardship if he were removed to his native country. So the issue before the Court is very straightforward. The issue is whether the agency, in this case the Board of Immigration Appeals, ignore material evidence and its own precedent in analyzing that hardship standard. We contend that they did. And so I want to start by going over the elements that the Board of Immigration Appeals' own precedents say they have to consider when analyzing hardship. And so in matter of Anderson, OJO, Cervantes-Gonzalez, Evie, they outline four main factors. So first, applicants' familial ties to the United States. Two, health conditions, how they're affected here, how serious they are, and also how much more affected they'll be if the person is removed. Three, country conditions, and the specific language used by the Board is difficult economic and political conditions in the country of removal. And lastly, financial impact of deportation on the applicant himself. So with that framework in mind, I want to go over the main pieces of evidence that are clear to us from the record were ignored by the agency. So first, I want to talk about the psychological assessment that was filed and admitted without objection. It is now part of the record. That very lengthy, single-space assessment at Administrative Record 161 to 177 not only diagnoses Mr. Simital-Gularza with PTSD, severe anxiety, severe depression, and personality disorders, but also explains what those illnesses are and how they affect him and how much more he would be affected if he were removed to Mexico. Ms. Espinosa, the Board specifically noted that you had not shown that you could not obtain treatment for your anxiety and depression in Mexico. Why isn't that sufficient to support that the Board considered his diagnosis? For two reasons, Your Honor, and thank you for asking that question. It actually shows how much of the evidence they ignored. So first of all, it mischaracterizes his diagnosis. It's very clear he doesn't have depression and anxiety. While those conditions might be serious, they are not the PTSD that he has, the personality disorder that he has, and the severe anxiety and depression that he has. But it also ignores what the assessment says, right? Two parts of it that I want to point out for the Court that show that he would have a very hard time, if not impossible time, finding treatment in Mexico. First, it says, at this level of illness, it is impossible to solve problems because Simmental Galarza's focus is completely scattered and his awareness of the environment around him is significantly narrowed. That's Administrative Record 172. Moreover, the Human Rights Report, which has all of his evidence, was admitted into the record without objection. So we don't have a factual issue here. The Human Rights Report at AR 212 deals with persons with disabilities, specifically mental disabilities, and it says there is serious employment discrimination for the mentally ill. In the institutions that should be treating the mentally ill, there is serious human rights abuses, which include lack of access to justice, the use of physical and chemical restraint, physical and sexual abuse, trafficking, forced labor, and disappearance. So this, to point out some, there is also testimony by him and other parts of the record that show his inability to obtain, financially, the treatment. But why wouldn't the Board's statement that I just read be sufficient to establish that they didn't think the report alone and what you've just identified met his burden? As you know, the Board doesn't have to say a lot. Why wouldn't that statement be sufficient? Again, because it's contradicted by the evidence, and it also mischaracterizes the issue and the problem that Mr. Simmental-Glars is facing. So, for example, before we go any further down that road, I have a threshold question about jurisdiction here. Cancellation of removal is a discretionary decision and, as such, is unreviewable. We have jurisdiction only over legal questions or constitutional challenges, and these cases often present, to try to fit that limitation, as arguments that the Board ignored certain evidence because we have precedent that says that if the argument is framed as one that the agency ignored evidence, that's a legal question. And that's a very difficult line to draw because a question of the adequacy of the Board's consideration of a certain category of evidence can be characterized, on the one hand, as a question of sufficiency or adequacy. We don't have authority to review that. The Board has discretion to weight different categories of evidence in different ways, and we don't have jurisdiction to review the adequacy of its decisions in that regard. Or it can be characterized as, well, the Board ignored this piece of evidence, the Board ignored that piece of evidence, and that's a legal issue in order to try to fit the case within the framework that this Court has said constitutes a legal challenge rather than a sufficiency challenge or a challenge to the discretionary weight that the agency has given particular pieces of evidence. Why does this case fall on the reviewable side as opposed to the non-reviewable side? I see it, frankly, as a challenge to the adequacy of the Board's consideration of the mental health evidence and the other categories of evidence. That's just unreviewable, and that would be a jurisdictional problem. So there's three things I want to address that answer your question, Your Honor. First, the statute says the conclusion whether to grant or deny discretionary relief is unreviewable. So it's the conclusion itself. It's not the mistakes made by the Board in leading up to that conclusion. While the ultimate conclusion of the Board, even if this Court grants review and remands, we don't know what it's going to be. All right, but the conclusion is based on an exercise of discretion to give certain weight to certain categories of evidence. We don't have jurisdiction to reweigh the evidence. And that's exactly what this Court has said is not an exercise of discretion. So this Court in Champion very clearly said failure to exercise discretion is not an exercise of discretion. Failure to review material evidence is also not an exercise of discretion. It's a mistake. It's a legal error. And that's what the seminal case, Champion, says about jurisdiction. There's another very important point that I want to make sure it doesn't get lost in the pages of argument. The statute gives noncitizens the right to file evidence. And in a case such as this one where that evidence was admitted with no objection by the parties, there's an implication that the Court has to consider it, right? And there cannot be, it cannot be true that LEAs have the right to file this evidence and there's a duty by the courts to review it, and at the same time, that not reviewing material evidence or material factors in analyzing the case is not a legal error. Those two things cannot be true at the same time. And that is consistent with what this Court has held in every case related to a challenge and a good faith claim that the agency ignored material evidence. Champion is one of them. Lamb is another one that is also very factually similar to this case. But also, in Iglesias v. McKasey, this Court specifically said, we have jurisdiction to entertain claims of legal error based on the agency's failure to consider evidence. It doesn't mean that the court has to agree that the agency failed to consider evidence, but there's definitely jurisdiction to do so. And in every case, the court has held that there is jurisdiction. You'll hear probably an argument that Stepanovich is more similar to this case than any other, but that case does not stand for the principle that this Court has no jurisdiction. That case stands for the principle that that particular petitioner did not make a claim of legal error. Stepanovich did not file any evidence to support his claim. And the only argument that he was presenting is that he wasn't on notice that he should file documentary evidence. That the court found him persuasive, saying, well, you have the burden of proof. You're the applicant, so of course you're on notice. But it's completely different from saying that the court does not have jurisdiction. That's just simply not what the court held. And there is no case in this circuit in the decades of precedent addressing the agency and the Board of Immigration Appeals that holds otherwise. Moving back to what Judge St. Ede was asking, that's how we know, because the path to showing that the agency heard, thought, and reasoned the evidence cannot be by mischaracterizing the evidence in the record, which is exactly what the Board of Immigration Appeals did. And that's exactly what they've done in Lamb, for example. In Lamb, it's not like they didn't talk about the relatives' depression. They said depression after the birth of the first child. But that wasn't the issue that she was facing alone. She was facing issues with depression after the birth of her first child, and she was facing depression thereafter. And obviously that changed what the mental illness made to her in her life and what would happen to her if removal resulted. Same thing here. It's actual evidence that the Board of Immigration Appeals did not consider the psychological assessment, nor any of the evidence showing what my client's illnesses are and how they affect him and how much more they would affect him if he's removed, because he doesn't have depression and anxiety. He has PTSD, personality disorders, severe ones that are chronic, and severe anxiety and depression, severe depression as well. Those change his ability to function at a basic level. The report makes that clear over and over and over again. It says he cannot function socially, he cannot function occupationally, he cannot function at a personal level. And this is going to be exacerbated if he is removed, because he's going to lose, frankly, the country that he knows for the past 20 years when he came here as a child and also lose the family network that he has here that is helping him to some degree cope with the serious illness that he has. Ms. Espinoza, what kind of information is there in the record about the available psychiatric facilities to treat this condition in Mexico? There is a very detailed human rights report, which is kind of the standard of evidence that the agency agrees should always be considered. And specifically at the administrative record page 212, it starts from 211 to 213, but specifically it says that people with mental illnesses are not discriminated, they're not treated, and the institutions that exist which treat mental illnesses actually end up abusing the patients themselves. They end up physically harming them, sexually abusing them, trafficking them. I read that, yeah, but this is a study done by whom? The Department of State, the government itself. So the government of the United States says that this is what the agency must consider is the circumstances in Mexico. I understand that's what the agency must consider, but what does the Department of State say about the particular facilities in Mexico? That they are plagued by human rights abuses of the type in the nature as described. Yeah, at least as a general statement. All facilities? How many? It says it's a widespread problem throughout. And it also says that because of that, the nature of treatment is very limited. From what area? Because even private throughout Mexico. The report talks about Mexico in general. Yeah, that's what I'm getting at. And it talks about problems that are a problem throughout of Mexico. If I may, what area of Mexico is your client from? From the state of Durango, which is the northern side of the country. Yes. Now, is there any location-specific evidence with respect to what he's liable to face in that area of the country? Yes, as far as country conditions generally. Durango conditions generally. What's he going to face when he gets off the bus? That's what I want to know. Does the record tell me? So when he gets off that bus, it says that Durango is one of the most dangerous states in the entire country. It actually, the Department of State also has a travel warning to this particular state. It says, do not go. Consider going if you have plans to do so. And moving from that, it shows a degree of violence and targeted for people like Mr. Simital Galarza for returning migrants is extremely high. Other reports, a specific study made by the San Diego University talks about that males within his age group specifically are eight times more likely to be targeted than others. Is that a San Diego study in the record? Correct, and that's specifically administrative record 252. So when he gets off the bus, his likelihood of being targeted and suffering, again, we're looking at hardship only. We're not looking at the standard of is this person going to be physically harmed. That's not the standard that this particular form of relief requires. We're looking at how much harder it would be for him. And so the reports, all of them, the psychological assessment, the human rights report, the studies by the universities, articles, news articles, all make the case very clearly that he gets off the bus. He cannot have a normal life. The likelihood that he'll be targeted for violence is much higher. The likelihood that he'll obtain employment with his mental illness and the conditions is completely normal. Is the standard different in a case like this, which is based on spousal abuse as opposed to other cases? That is correct. It is correct. So, in fact, the statute divides it up. So there's the normal cancellation of removal. There's one for lawful permanent residence, and there's one for non-residence. And then it has a section below specifically addressing spousal abuse, and the standard is meant to be lower. So for the conventional cancellation of removal, the standard is exceptional and unusual hardship. That's not what the standard is for this type of case. The standard, as outlined in matter of Anderson, O.J.O., Cervantes-Gonzalez, Iggy, and all of the board's precedent is a lower standard of hardship. Now, did the BIA or the immigration judge show an awareness of this difference in the standard? It did not. It does not mention the difference and the particular specifics of this case and why the circumstances of his abuse and his mental illness make a difference. It did not even understand what his mental illnesses were. I see that my time has gone into the rebuttal portion of it. Actually, you've used almost twice your time, but we kept you at the podium for a lot of questions. Thank you. But your time has long ago expired. Ms. Givas? Givas. Givas. Good morning, Your Honors. May it please the Court? Andrea Givas on behalf of the Attorney General. This Court lacks jurisdiction to consider the petition for review because the agency's denial of special rule cancellation based on the petitioner's failure to show extreme hardship is a discretionary determination outside the jurisdiction of this Court. Petitioner attempts to claim legal error in the agency's denial based on a report dealing with mental illness, but is actually asking this Court to re-weigh the evidence, which is exactly what this Court has held it lacks jurisdiction to do. There are six places in the agency decision that mentions either mental illness or this report. The first one is in the BIA's opinion. It talks about how the hardship is cumulative, and it references the mental illness, the no physical or mental impairment. It specifically mentions depression. And the Board, in its decision, adopted and affirmed the immigration judge's analysis and reasoning. Does it matter, Ms. Givas, that it doesn't address or mention the severity of the issues? No. The Board says in hardships cumulatively and references the IJ's decision. And this agency is not required to write an exegesis on everything. It's not required to discuss. That statement's been thrown in my face in looking at briefs for today's oral arguments 15 times at least. Those are the kind of sound bites of appellate practice that really obscure analysis. They're not supposed to write an exegesis. What does that mean? It's not required to mention or discuss every piece of evidence. It must announce its decisions, enabling a Court to review it. That's what this Court said in Keeley. And it has. The agency, the Board, mentions four places with this specific mental illness. And then the IJ, in its opinion, which, again, the Board adopted and affirmed its analysis and reasoning, said the Court acknowledges, according to the psychologist's assessment prepared by Karen, this is the psychological assessment that petitioner, it says petitioner suffers from anxiety and stress. The immigration, also in the facts section, said petitioner's diagnosed with anxiety, depression, PTSD, and development personality disorder. The agency considered the mental illness in finding that petitioner did not show extreme hardship to him and, therefore, denied special rule cancellation. Therefore, there is no legal error. And without legal error, this Court lacks jurisdiction. Well, that's a post-facto kind of a determination. You know, they assert legal error. We find no legal error. Therefore, there's no jurisdiction. Correct, Your Honor. There is no legal. But they asserted legal error. But the government is arguing that there is no legal error. Petitioner's legal error is that they did not consider the mental illness or this report. Yeah. So, you don't think that's an error? That is not the case, Your Honor. There are six points that I just showed where the board or the immigration. Oh, I understand. I understand. But my point is they asserted a legal error. Petitioner is claiming a legal error. Yes. You will admit that. That is what they're claiming. The government will not admit that there is legal error. Of course not. The government never admits there's legal error. But the fact of the matter is you do admit they alleged it. They alleged it. Okay. And now we have and we've been discussing, for instance, whether or not there's a sufficient coming to grips with the statutory standard for domestic violence or whether the agency acknowledged that and came to grips with it. If they didn't, there's a legal error. Right? Okay. Well, we may come at you a way. But the fact of the matter is we might come at you a way, too. We have jurisdiction to consider that question, right? You do have jurisdiction, Your Honor. And even if, which the government respectfully disagrees, even if this court were to find legal error, petitioner did not show extreme hardship. That's the only issue before this court is extreme hardship because that's the only thing that the agency ruled on. And he did not show extreme hardship to him, which is what is at question. And that is what must be evaluated is it must be beyond, to show extreme hardship, petitioner must show what is beyond normal, typical issues associated with deportation. Petitioner claims loss of employment and family ties. That is something that is typical of deportation. He has not shown anything that is beyond. Yes, Your Honor. Could you point to some place in either the board's opinion or the IJ's opinion, take your choice, please, where the board in its analysis of this situation really does, where they really do show that there's a different standard in these domestic abuse cases as opposed to other kinds of removal cases? Well, in the IJ's decision, it outlines on page 66, 67, especially on page 66 at the top, it outlines the requirements to receive special rule cancellation of removal. Right. And that last one is what is at issue number five, extreme hardship to him or his children. Petitioner does not have any children, so then the question just becomes petitioner's extreme hardship. Okay. And where do they, in looking at the availability of facilities in Mexico, where does the court apply that? That's on page 67. It talks about the extreme hardship. And then if you reference page three in the board's decision, it says, while we acknowledge the country conditions in Mexico can be violent and dangerous, respondent has not meaningfully shown he would face violence or danger in his home country. And this is a good point to note that this is petitioner's burden to prove special rule cancellation of removal. And so those two places, Your Honor. I want to go back to a statement you made a moment ago. You said they have claimed legal error, and if we find no legal error, we dismiss it for lack of jurisdiction. Correct, Your Honor. Would we dismiss for lack of jurisdiction or deny the petition if we find no legal error? If you find no legal error, then it would be a discretionary determination. The court would lack jurisdiction to review it. And so regardless, Your Honor, this court lacks jurisdiction to review the discretionary denial, even if this court were, which, again, the government disagreed were to find legal error, petitioner has not met his burden of showing extreme hardship for special rule cancellation of removal. I'm happy to take any more questions. Thank you, Your Honors. All right. Your time has expired, Ms. Espinoza, and you had almost ten full minutes of extra time. So I'm going to call it a wrap, and the case is taken under advisement.